808 So.2d 82 (2001)
UNITED AUTOMOBILE INSURANCE COMPANY, Petitioner,
v.
Marisol RODRIGUEZ, Respondent.
State Farm Fire and Casualty Company, Petitioner,
v.
Juana Maria Perez, Respondent.
Nos. SC00-111, SC00-112.
Supreme Court of Florida.
November 8, 2001.
Rehearing Denied February 12, 2002.
*83 Steven E. Stark of Fowler, White, Burnett, Hurley, Banick & Strickroot, P.A., for United Automobile Insurance Company, Petitioner.
James K. Clark of Clark, Robb, Mason & Coulombe, and Frances F. Guasch of Kevin W. Korth & Associates, Miami, FL, for State Farm Mutual Automobile Insurance Company, Petitioner.
John H. Ruiz, Luisa M. Linares, and Maloy Castro Morales of John H. Ruiz, P.A., and Amado Alan Alvarez of Alvarez & Alvarez Zane, Miami, FL, for Marisol Rodriguez and Juana Maria Perez, Respondents.
David B. Shelton of Rumberger, Kirk & Caldwell, Orlando, FL; and Peter J. Valeta of Ross & Hardies, Chicago, IL, for Allstate Insurance Company and Florida Insurance Council, Amici Curiae.
Vincent F. Iacono of the Law Offices of Howard W. Weber, Tampa, FL, for GEICO Casualty Company, GEICO Indemnity Company, GEICO General Insurance Company, and Government Employees Insurance Company, Amici Curiae.
Edward H. Zebersky of Zebersky, Payne & Kushner, LLP, Hollywood, FL; and Philip M. Burlington of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, FL, for Academy of Florida Trial Lawyers, Amicus Curiae.
Robert A. Robbins of Robbins & Reynolds, P.A., Miami, FL; and Arthur Joel Berger, Miami, FL, Amicus Curiae.
SHAW, J.
We have for review Perez v. State Farm Fire & Casualty Co., 746 So.2d 1123 (Fla. 3d DCA 1999), based on conflict with Jones v. State Farm Mutual Automobile Insurance Co., 694 So.2d 165 (Fla. 5th DCA 1997). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. We quash Perez.

I. FACTS
The relevant facts in the Rodriguez case are set forth in the district court opinion below:
Marisol Rodriguez sustained injuries in an automobile accident and made a PIP claim to her insurer, United Auto, on October 1, 1997. United Auto admitted coverage and waived all defenses except as to the reasonableness, relationship, and medical necessity of the bills incurred.
On October 17, Ms. Rodriguez submitted her claimed medical bills to United Auto. As of November 26, United Auto had not received a report indicating that these claimed medical bills were unreasonable, unrelated, or unnecessary.
On December 17, Ms. Rodriguez submitted more medical bills for payment. On January 16, United Auto submitted Ms. Rodriguez's medical bills for review to a doctor who issued a report to United Auto on January 19, 1998, outside the thirty-day statutory time period.
Ms. Rodriguez sued [in county court] to recover the amount of the unpaid medical bills plus interest. § 627.736(4)(b), (c), Fla. Stat. (1997). She moved for summary judgment on the grounds that the insurer had only thirty days from the date of receipt of the medical bills to obtain a report constituting "reasonable proof" that the treatments were not reasonable, related, or necessary and that absent same, the insurer could not defend on that basis, *84 thereby entitling her to final summary judgment.
United Auto conceded that it did not obtain reasonable proof within the thirty-day period and did not raise any coverage defense. However, United Auto argued that the failure to obtain the report did not compel payment of the bills, but only subjected it to paying interest and attorney's fees should liability be established. The trial court entered final summary judgment in favor of Ms. Rodriguez for the amount of the medical bills plus accrued interest....
Perez v. State Farm Fire and Casualty Co., 746 So.2d 1123, 1124 (Fla. 3d DCA 1999) (emphasis omitted). The county court certified the issue to the district court as a question of great public importance.[1]
The relevant facts in the Perez case also are set forth in the district court opinion below:
On March 24, 1996, Ms. Perez sustained personal injuries as a result of an automobile accident. She sought treatment for her injuries and submitted medical bills to State Farm under the PIP coverage of her automobile insurance policy. State Farm failed to pay the bills; Ms. Perez filed a lawsuit [in county court] against State Farm for payment of these bills.
Ms. Perez moved for summary judgment on the grounds that the defendant had no reasonable proof to establish that it was not responsible for the payment of her claimed medical bills within the thirty-day statutory period. She argued "that failure to obtain such proof within the statutory period means the insurer must pay the bills, in their entirety, at the expiration of the 30 day period."
The trial court entered summary judgment in Ms. Perez's favor, ruling that it is the "responsibility on the part of an insurer to pay within 30 days absent reasonable proof within that time that they are not responsible for payment." On appeal, the circuit court appellate division reversed the trial court in a two-to-one decision although State Farm conceded "that it failed to obtain reasonable proof that it is not responsible within the 30-day period."
Perez, 746 So.2d at 1124-25 (emphasis omitted). Perez sought certiorari review of the circuit court decision, and the district court consolidated the Rodriguez and Perez cases and rendered a single decision.
The district court affirmed the county court decision in the Rodriguez case, quashed the circuit court decision in the Perez case, and held that because the insurers failed to pay the claims within the thirty-day statutory period they now must pay the claims, i.e., they cannot contest the claims. The court also held that the insurers must pay statutory interest. This Court granted review based on conflict with Jones v. State Farm Mutual Automobile Insurance Co., 694 So.2d 165 (Fla. 5th DCA 1997), wherein the court noted that failure to pay within the thirty-day period exposes an insurer to the statutory penalties but does not bar the insurer from contesting the claim.[2]
The instant cases present the following issue: If the payment of benefits for a PIP claim is "overdue" under section 627.736, *85 Florida Statutes (1997), are the penalties set forth in Florida Statutes the only penalties that may be levied against the insurer, or is the insurer also forever barred from contesting the claim. Both United Automobile Insurance Company and State Farm Fire and Casualty Company contend that the statutory sanctions are the only penalties approved by the Legislature. We agree.

II. "OVERDUE" PAYMENT OF BENEFITS
Legislative intent, as always, is the polestar that guides a court's inquiry under the Florida No-Fault Law ("the Law").[3] Where the wording of the Law is clear and amenable to a logical and reasonable interpretation, a court is without power to diverge from the intent of the Legislature as expressed in the plain language of the Law. The Law, which was enacted in 1971, was intended to provide a minimum level of insurance benefits without regard to fault:
627.730 Florida Motor Vehicle No-Fault Law.Sections 627.730-627.7405 may be cited and known as the "Florida Motor Vehicle No-Fault Law."
627.731 Purpose.The purpose of ss. 627.730-627.7405 is to provide for medical, surgical, funeral, and disability insurance benefits without regard to fault, and to require motor vehicle insurance securing such benefits, for motor vehicles required to be registered in the state and, with respect to motor vehicle accidents, a limitation on the right to claim damages for pain, suffering, mental anguish, and inconvenience.
§§ 627.730, 627.731, Fla. Stat. (1997). Section 627.736 sets forth the benefits that are required for personal injury protection (PIP) and mandates coverage if the loss is sufficiently related, reasonable, and necessary:
627.736 Required personal injury protection benefits; exclusions; priority. 
(1) REQUIRED BENEFITS.Every insurance policy complying with the security requirements of s. 627.733 shall provide personal injury protection to the named insured, relatives residing in the same household, persons operating the insured motor vehicle, passengers in such motor vehicle, and other persons struck by such motor vehicle and suffering bodily injury ... to a limit of $10,000 for loss sustained by any such person as a result of bodily injury, sickness, disease, or death arising out of the ownership, maintenance, or use of a motor vehicle as follows:
(a) Medical benefits.Eighty percent of all reasonable expenses for necessary medical, surgical, X-ray, dental, and rehabilitative services....
§ 627.736(1)(a), Fla. Stat. (1997) (emphasis added).
Section 627.736 also defines an "overdue" payment of benefits and sets forth the penalties that may be levied:
(4) BENEFITS; WHEN DUE. Benefits due from an insurer under ss. 627.730-627.405 shall be primary, except that benefits received under any workers' compensation law shall be credited against the benefits provided by subsection (1) and shall be due and payable as loss accrues, upon receipt of reasonable proof of such loss and the amount of expenses and loss incurred which are covered by the policy issued under ss. 627.730-627.7405....
. . . .
(b) Personal injury protection insurance benefits paid pursuant to this section *86 shall be overdue if not paid within 30 days after the insurer is furnished written notice of the fact of a covered loss and of the amount of same. If such written notice is not furnished to the insurer as to the entire claim, any partial amount supported by written notice is overdue if not paid within 30 days after such written notice is furnished to the insurer. Any part or all of the remainder of the claim that is subsequently supported by written notice is overdue if not paid within 30 days after such written notice is furnished to the insurer. However, any payment shall not be deemed overdue when the insurer has reasonable proof to establish that the insurer is not responsible for the payment, notwithstanding that written notice has been furnished to the insurer....
(c) All overdue payments shall bear simple interest at the rate of 10 percent per year.

. . . .
(8) APPLICABILITY OF PROVISION REGULATING ATTORNEY'S FEES.With respect to any dispute under the provisions of ss. 627.730-627.7405 between the insured and the insurer, the [attorneys' fees] provisions ofs. 627.428 shall apply.[[4]]
§ 627.736, Fla. Stat. (1997) (emphasis added). The legislative intent evinced in the penalty provisions is clear: The provisions were intended to promote the prompt resolution of PIP claims by imposing several reasonable penalties on insurers who pay late.
In sum, the criteria governing payment of benefits and penalties are as follows: (1) an insured may seek the payment of benefits for a covered loss by submitting "reasonable proof" of such loss to the insurer;[5] (2) if the benefits are not paid within thirty days and the insurer does not have reasonable proof that it is not responsible for the payment, the payment is "overdue";[6] (3) all "overdue" payments shall bear simple interest at a rate of ten percent per year;[7] and (4) whenever an insured files an action for payment of PIP benefits and prevails, the insured is entitled to attorneys' fees.[8]

*87 III. THE PRESENT CASE
The district court below held as follows concerning the late payment of claims in the present cases:
The PIP statute clearly requires that the insurer must obtain, within thirty days, a medical report providing "reasonable proof" that it is not responsible for payment. Here, the insurers failed to obtain such a report and, hence, must promptly pay the claim plus accrued interest.
Perez, 746 So.2d at 1125 (emphasis omitted and added). Thus, according to the district court, where an insurer improperly fails to pay a claim within thirty days, the insurer must pay the claim, i.e., the insurer can no longer contest the claim. The insurer also is liable for the statutory interest penalty. This holding violates the plain language of the Law.
As noted above, the plain language of section 627.736 provides that an insurer is subject to specific penalties for an "overdue" payment: ten percent interest and attorneys' fees. Nothing in the statute provides that once a payment becomes overdue the insurer is forever barred from contesting the claim. In holding otherwise, the district court erred.
Further, the district court held that in order to escape the thirty-day rule, an insurer must obtain a "medical report" showing that the insurer is not responsible for payment.[9] Amici Allstate Insurance Company and Geico Casualty Company point out that this requirement of a medical report is not mentioned anywhere in section 627.736(4) and they contend it is erroneous. Amici are correct. The statute does not mention "medical report" in this regard;[10] the statute simply says that the insurer must pay benefits within thirty days unless the insurer "has reasonable proof to establish that the insurer is not responsible for the payment."[11] The statute does not limit "reasonable proof" to a "medical report." Thus, to the extent that the present district court opinion defines "reasonable proof" to mean only a medical report, the district court has rewritten the statute. This too was error.

IV. CONCLUSION
Under the language of the Florida No-Fault Law, an insurer is subject to specific penalties once a payment becomes "overdue"; the penalties include ten percent interest and attorneys' fees. The insurer, however, is not forever barred from contesting the claim. Our reading of section 627.736(4) is consistent with the decisions of other district courts that have addressed this statute, including the Third District Court of Appeal's own en banc decision in Fortune Insurance Co. v. Pacheco, 695 So.2d 394 (Fla. 3d DCA 1997).[12]
*88 Based on the foregoing, we quash Perez v. State Farm Fire and Casualty Co., 746 So.2d 1123 (Fla. 3d DCA 1999).
It is so ordered.
WELLS, C.J., and HARDING, ANSTEAD, and PARIENTE, JJ., concur.
PARIENTE, J., concurs with an opinion, in which ANSTEAD, J., concurs.
LEWIS, J., dissents with an opinion, in which QUINCE, J., concurs.
PARIENTE, J., concurring.
I concur with the majority. I write to emphasize that this case involves an issue of statutory construction, which must be guided by the express language of section 627.736(4), Florida Statutes (1997), and not our own view of the best policy for resolving insurance disputes. See Rollins v. Pizzarelli, 761 So.2d 294, 299 (Fla.2000). Legislative intent must be determined primarily from the language of the statute. See id. at 297. Although the statutory language of section 627.736(4) may not be a model of clarity, reading the statute as a whole does not support either the Third District or the dissent's interpretation that the failure of the insurer to obtain reasonable proof within thirty days after the claim is submitted forever bars an insurer from contesting that the claim was not covered. In fact, to reach this result would be to impermissibly read words into the statute that simply do not exist.
Although I agree with the dissent that the purpose of the no-fault statutory scheme is to provide "swift and virtually automatic payment [to] the injured insured," Ivey v. Allstate Ins. Co., 774 So.2d 679, 683-84 (Fla.2000), the purpose of the no-fault scheme does not logically extend to require an insurer to automatically pay for bills for which the insurer is not responsible. I thus take issue with the dissent's suggestion that the majority opinion renders the "reasonable proof" language of section 627.736(4)(b) and the limitation on withdrawal of payment for treating physicians in section 627.736(7), Florida Statutes (1997), "meaningless and without any field of operation." Dissenting op. at 91.
Section 627.736(4) provides in pertinent part:
(b) Personal injury protection insurance benefits paid pursuant to this section shall be overdue if not paid within 30 days after the insurer is furnished written notice of the fact of a covered loss.... However, any payment shall not be deemed overdue when the insurer has reasonable proof to establish that the insurer is not responsible for the payment, notwithstanding that written *89 notice has been furnished to the insurer....
(c) All overdue payments shall bear simple interest at the rate of 10 percent per year.
(Emphasis added). I agree with Judge Klein's interpretation of the statute:
[T]he thirty-day period in section 627.736(4) applies only to benefits which are reasonable and necessary as a result of the accident. Section 627.736(4), Florida Statutes begins with the words "benefits due" and states in subsection (b) that "personal injury protection benefits paid pursuant to this section shall be overdue if not paid within thirty days." If an insured submits a bill for medical treatment which is not related to the accident, there are no "benefits due." If benefits are not due, they cannot be "overdue."
AIU Ins. Co. v. Daidone, 760 So.2d 1110, 1112 (Fla. 4th DCA 2000).[13]
The statutory penalty of ten percent interest for "overdue" payments thus comes into play if the insurer fails to pay the bill within thirty days after written notice and did not have reasonable proof within that thirty-day period to establish that it was not responsible for the bill. However, the penalty for "overdue" payments, which runs from the expiration of the thirty-day period, applies only if the insurer is ultimately found liable for the claim. The insurer does not forfeit its ability to contest payment by its failure to obtain reasonable proof in the thirty-day period.
As for section 627.736(7)(a), this statute deals exclusively with the requirements for withdrawal of payment:
An insurer may not withdraw payment of a treating physician without the consent of the injured person covered by the personal injury protection, unless the insurer first obtains a report by a physician licensed under the same chapter as the treating physician whose treatment authorization is sought to be withdrawn, stating that the treatment was not reasonable, related, or necessary.
§ 627.736(7)(a) (emphasis added). This statute requires that a PIP insurer obtain a medical report as a condition precedent to withdrawing benefits. Nothing in the language of section 627.736(4)(b) suggests that the "reasonable proof" necessary to avoid "overdue" status is limited to the "report" necessary to "withdraw" payment of a treating physician under section 627.736(7)(a). See § 627.736(4)(b). In my view, this interpretation of the "reasonable proof" requirement in section 627.736(4)(b) and the medical report requirement of section 627.736(7)(a) give meaning and effect to both statutory provisions, with each section operating independently of the other.
ANSTEAD, J., concurs.
LEWIS, J., dissenting.
For nearly three decades, the law in Florida has been clear that an insurer has the burden to investigate and verify a request for personal injury protection ("PIP") benefits within thirty days of receiving written notice of the fact of a covered loss and the amount of same, and thatabsent reasonable proof establishing non-responsibility for paymentPIP benefits are overdue if not paid within those thirty days. See § 627.736(4), Fla. Stat. (1997). As a corollary, section 627.736(7), Florida Statutes (1997), requires that before *90 an insurer may withdraw payment of a treating physician on the basis that medical treatment was not reasonable, not related, or not necessary, it must obtain a report from a like-licensed physician stating that the treatment is not reasonable, related, or necessary.[14] Today, under the guise of statutory interpretation, a majority of this Court totally alters the no-fault framework by judicially excising these significant provisions which have protected Florida citizens and supported its constitutional validity.
It cannot be contested that the prompt payment of PIP benefits, as a substitute for access to courts, represents one of the essential pillars upon which the constitutionality of the no-fault concept is premised. When the no-fault legislation came into effect in the early 1970's in Florida, it soon became the subject of constitutional challenges. One of the first cases to address this newly enacted tort reform was Kluger v. White, 281 So.2d 1 (Fla.1973). There, this Court invalidated that portion of the no-fault legislation which provided an exemption from tort liability for property damage on the ground that it denied Floridians the right of access to the courts under article I, section 21 of the Florida Constitution. See id. at 4-5. Less than a year later, this Court again addressed the constitutionality of the no-fault plan, but as it related to limitations on access to remedies for personal injuries. In that case, Lasky v. State Farm Insurance Co., 296 So.2d 9 (Fla.1974), the majority reasoned:
Protections are afforded the accident victim by this Act in the speedy payment by his own insurer of medical costs, lost wages, etc., while foregoing the right to recover in tort for these same benefits and (in a limited category of cases) the right to recover for intangible damages to the extent covered by the required insurance (F.S. § 627.737(1), F.S.A.); furthermore, the accident victim is assured of some recovery even where he himself is at fault. In exchange for his former right to damages for pain and suffering in the limited category of cases where such items are preempted by the act, he receives not only a prompt recovery of his major, salient out-of-pocket losseseven where he is at faultbut also an immunity from being held liable for the pain and suffering of the other parties to the accident if they should fall within this limited class where such items are not recoverable.
Id. at 14 (emphasis supplied). Based on the compulsory nature of the no-fault legislation and its provisions for the expeditious payment for covered losses, this Court ultimately concluded that the PIP provisions of the no-fault statute provided a reasonable alternative to traditional tort actions and, therefore, did not violate the right of access to the courts. See id. at 15.
The viability of the Lasky rationale with respect to the importance of a prompt resolution of PIP payments was recently recognized by a majority of this Court in Ivey v. Allstate Insurance Co., 774 So.2d *91 679 (Fla.2000). In Ivey, the Court recognized:
Without a doubt, the purpose of the no-fault statutory scheme is to "provide swift and virtually automatic payment so that the injured insured may get on with his life without undue financial interruption." Government Employees Ins. Co. v. Gonzalez, 512 So.2d 269, 271 (Fla. 3d DCA 1987) (citing Comeau v. Safeco Ins. Co., 356 So.2d 790 (Fla.1978)). To this end, section 627.736(4)(b), Florida Statutes (1995), clearly provides that PIP insurance benefits "shall be overdue if not paid within 30 days after the insurer is furnished written notice of the fact of a covered loss and of the amount of same."
For over a quarter of a century, Florida courts have consistently held:
[T]he statutory language is clear and unambiguous. The insurance company has thirty days in which to verify the claim after receipt of an application for benefits. There is no provision in the statute to toll this limitation. The burden is clearly upon the insurer to authenticate the claim within the statutory time period. To rule otherwise would render the recently enacted "no fault" insurance statute a "no pay" plan-a result we are sure was not intended by the legislature.
Id. at 683-84 (quoting Dunmore v. Interstate Fire Ins. Co., 301 So.2d 502, 502 (Fla. 1st DCA 1974)); see also Amador v. United Auto. Ins. Co., 748 So.2d 307 (Fla. 3d DCA 1999); Fortune Ins. Co. v. Pacheco, 695 So.2d 394, 395 (Fla. 3d DCA 1997); Martinez v. Fortune Ins. Co., 684 So.2d 201, 203 (Fla. 4th DCA 1996); Crooks v. State Farm Mut. Auto. Ins. Co., 659 So.2d 1266, 1268 (Fla. 3d DCA 1995).
In the present case, the majority's decision as reinforced by a concurring opinion allows insurance companies to simply disregard the specific provisions of chapter 627 which require the payment of benefits to injured persons within thirty days, absent reasonable proofobtained within that time periodthat they are not responsible for payment.[15]See § 627.736(4), (7), Fla. Stat. (1997). It is clear that the swift and expeditious payment of PIP benefits is at the heart of the no-fault concept and implementing statutes, and, in my view, the reasoning of the majority and concurring opinions today undermines the validity of the entire no-fault framework and places the legislative scheme at risk.
In essence, the majority decision renders the "reasonable proof" language found in section 627.736(4) and the limitation on the withdrawal of payment for treating physicians in section 627.736(7) meaningless and without any field of operation. The statute specifically states:
627.736(4) BENEFITS; WHEN DUE.
. . . .
(b) Personal injury protection insurance benefits paid pursuant to this section shall be overdue if not paid within 30 days after the insurer is furnished written notice of the fact of a covered loss and of the amount of same. If such written notice is not furnished to the insurer as to the entire claim, any partial amount supported by written notice is overdue if not paid within 30 days after such written notice is furnished to the insurer. Any part or all of the remainder of the claim that is subsequently supported by written notice is overdue if not paid within 30 days after *92 such written notice is furnished to the insurer. However, any payment shall not be deemed overdue when the insurer has reasonable proof to establish that the insurer is not responsible for the payment, notwithstanding that written notice has been furnished to the insurer.

The direct statutory language provides that payments required to be paid within thirty days are not overdue if the insurer "has reasonable proof" it is not responsible. According to the majority and concurring opinions, the "has reasonable proof" statutory language has been judicially rewritten to be "is ever able to obtain reasonable proof." The notion of payment within thirty days unless the insurer "has reasonable proof" is now replaced by judicial decree (not statutory language) that if an insurer can ever establish proof to contest the payment of benefits, the thirty-day provision is meaningless. The practical impact of this judicial rewrite is to sanction the practice of withholding benefits for extended periods of time without any basis whatsoever and then permit the contesting and litigating of minor aspects related to loss of wages and medical treatment rendered years earlier.
Taken to its logical conclusion, the majority's rationale belittles the protections afforded to those insured under the no-fault statute, and equates statutory noncompliance by an insurer with a simple breach of contract. That is, the decision removes the statutory mandate that insurers make timely and proper payments. The majority view today as enhanced by a concurring opinion transforms the no-fault concept of benefits into just another form of health insurance and disability insurance without limited time parameters to secure benefits for injured Floridians. In fact, the majority and concurring opinions interpret the no-fault statutes in a manner that simply provides a thirty-day grace period for payment of benefits that even other forms of health and disability insurance are not afforded.
QUINCE, J., concurs.
NOTES
[1] See generally § 34.017(1), Fla. Stat. (1997) ("A county court is permitted to certify a question to the district court of appeal....").
[2] The Fourth District Court of Appeal has since addressed this issue, stated agreement with Jones, and certified direct conflict with the district court's decision in the present case. See AIU Ins. Co. v. Daidone, 760 So.2d 1110 (Fla. 4th DCA 2000). See infra note 12.
[3] See Blish v. Atlanta Casualty Co., 736 So.2d 1151, 1155 (Fla.1999).
[4] Section 627.428(1), Fla. Stat. (1997), provides:

(1) Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court ... shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.
[5] See § 627.736(4), Fla. Stat. (1997) (explaining that an insured must submit "reasonable proof of such loss and amount of expenses").
[6] See § 627.736(4)(b), Fla. Stat. (1997) ("Personal injury protection insurance benefits paid pursuant to this section shall be overdue if not paid within 30 days after the insurer is furnished written notice of the fact of a covered loss and of the amount of same.... However, any payment shall not be deemed overdue when the insurer has reasonable proof to establish that the insurer is not responsible for the payment, notwithstanding that written notice has been furnished to the insurer.").
[7] See § 627.736(4)(c), Fla. Stat. (1997) (explaining that "[a]ll overdue payments shall bear simple interest at the rate of 10 percent per year"). This ten percent interest rate has been in force since the Law was enacted in 1971. See § 627.736(4)(c), Fla. Stat. (1971). In contrast, the statutory interest rate on judgments in 1971 was six percent. See § 55.03, Fla. Stat. (1971).
[8] See § 627.736(8), Fla. Stat. (1997) (explaining that the attorneys' fee provision of section 627.428 applies to PIP claims); see also § 627.428(1), Fla. Stat. (1997) (explaining that an insurer is liable for fees in a proceeding wherein an insured prevails against the insurer). Ivey v. Allstate Ins. Co., 774 So.2d 679, 684 (Fla.2000) ("It is the incorrect denial of benefits, not the presence of some sinister concept of `wrongfulness,' that generates the basic entitlement to the fees if such denial is incorrect.")
[9] See Perez, 746 So.2d at 1125 ("The PIP statute clearly requires that the insurer must obtain, within thirty days, a medical report providing `reasonable proof' that it is not responsible for payment." (Emphasis added.)).
[10] But see § 627.736(7), Fla. Stat. (1997) (explaining that a physician's report is required for the non-consensual withdrawal of PIP benefits).
[11] § 627.736(4), Fla. Stat. (1997) (emphasis added).
[12] See, e.g., Fortune Ins. Co. v. Pacheco, 695 So.2d 394 (Fla. 3d DCA 1997) (holding the insurer liable for statutory penalties where the insurer paid PIP benefits more than thirty days after receipt of the claim); Jones v. State Farm Mutual Auto. Ins. Co., 694 So.2d 165 (Fla. 5th DCA 1997) (holding the insurer liable for statutory penalties but noting that the insurer can still contest the claim where the insurer failed to pay PIP benefits within thirty days of receipt of the claim); Martinez v. Fortune Ins. Co., 684 So.2d 201 (Fla. 4th DCA 1996) (holding the insurer liable for statutory penalties where the insurer paid PIP benefits more than thirty days after receipt of the claim); Crooks v. State Farm Mutual Auto. Ins. Co., 659 So.2d 1266 (Fla. 3d DCA 1995) (holding the insurer liable for statutory penalties where the insurer paid PIP benefits more than thirty days after receipt of the claim); Dunmore v. Interstate Fire Ins. Co., 301 So.2d 502 (Fla. 1st DCA 1974) (holding the insurer liable for statutory penalties where the insurer failed to pay PIP benefits within thirty days of receipt of the claim; the insurer did not dispute the insured's entitlement to benefits). Cf. AIU Ins. Co. v. Daidone, 760 So.2d 1110 (Fla. 4th DCA 2000) (setting forth no facts but nevertheless holding that failure to pay PIP benefits within thirty days subjects an insurer to statutory penalties but "does not deprive the insurer of its right to contest payment"; certifying conflict with Perez v. State Farm Fire & Casualty Co., 746 So.2d 1123 (Fla. 3d DCA 1999)).
[13] The First and Fifth Districts are in agreement with the Fourth District's interpretation of the statute. See State Farm Mut. Auto. Ins. Co. v. Jones, 789 So.2d 504, 508 (Fla. 1st DCA 2001); Jones v. State Farm Mut. Auto. Ins. Co., 694 So.2d 165, 166 (Fla. 5th DCA 1997).
[14] It is important to note that subsection (7) covers situations where the insurer under a PIP policy seeks to withdraw payment of a treating physician on the basis that the treatment, as opposed to the charge for that treatment, is not reasonable, related, or necessary. That is, subsection (7) requires an insurance company to obtain a report from a physician licensed under the same statute as the treating physician only in those situations where the insurer wishes to challenge the reasonableness, relatedness, or necessity of the services and treatment rendered. To be sure, subsection (7) does not require insurance companies to obtain a similar report when its challenge is based on the bill itself (i.e., the amount being charged).
[15] Senate Bill 1092, which was passed by our Legislature during the 2001 Session and approved by the Governor on June 19, 2001, adds language to section 627.736(4). This legislative revision, however, was not in place in 1997 and has no application in this case.