849 So.2d 446 (2003)
PROFESSIONAL CONSULTING SERVICES, INC. a/a/o Susan Berlinghoff, Appellant,
v.
HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, Appellee.
No. 2D02-429.
District Court of Appeal of Florida, Second District.
July 16, 2003.
Mark A. Boyle of Fink & Boyle, P.A., Fort Myers, for Appellant.
Karen A. Barnett and Deborah L. Appel of Barnett & Associates, P.A., Tampa, for Appellee.
NORTHCUTT, Judge.
When dismissing this lawsuit, the county court for Manatee County certified the following question of great public importance:
Whether a corporation that is not a physician, hospital, clinic or other person or institution lawfully rendering treatment to an insured person for bodily injury covered by personal injury protection benefits, as set forth in Florida Statute § 627.736(5)(a), is entitled to recover *447 PIP benefits for services provided by a healthcare provider pursuant to a valid assignment of benefits from the insured under Florida Statute § 627.736.
We accepted jurisdiction. See Fla. R.App. P. 9.030(b)(4)(A); United Auto. Ins. Co. v. Rodriguez, 808 So.2d 82, 84 n. 1 (Fla.2001). We answer the county court's question in the affirmative, reverse its order dismissing the suit, and remand for further proceedings.
Professional Consulting Services sued Hartford Life and Accident Insurance Company seeking to collect personal injury protection benefits owed to Hartford's insured, Susan Berlinghoff. The complaint stated that Professional had accepted an assignment of PIP benefits from Berlinghoff, which was given "for the purpose of billing [Hartford] for treatment rendered to [Berlinghoff] by Bartholomew Care Chiropractic and Jeffrey J. Gibson, D.O." Hartford moved to dismiss, contending that section 627.736(5), Florida Statutes (2000), prevented Professional from making claims under Hartford's PIP policy. Hartford maintained that it was only required to make payment to four entities: a physician, a hospital, a clinic, or another person lawfully rendering treatment. See id. No one disputed that Professional was not one of these.
The county court expressed its belief that section 627.736 does not prevent an insured from assigning her rights to a non-medical assignee, who could then collect the PIP benefits, because the statute is silent on the right to assign. But the court concluded it was obliged to dismiss Professional's suit on the authority of Federated National Insurance Co. v. Physicians Charter Services, 788 So.2d 403 (Fla. 3d DCA 2001), review denied, 807 So.2d 654 (Fla.2002).
In Physicians Charter, the Third District reversed summary judgments against the PIP insurer, holding that because Physicians Charter did not provide medical services, it could not collect PIP policy benefits. 788 So.2d at 404 ("There is no provision in Florida's personal injury protection statutes for the payment of policy benefits to a third party who has not performed medical services."). But the few facts in that opinion do not reveal whether Physicians Charter held an assignment of benefits from the insured. As such, we do not believe it controls the question in this case.
Generally, rights under a contract are assignable. See New Holland, Inc. v. Trunk, 579 So.2d 215, 217 (Fla. 5th DCA 1991). In keeping with this policy, Florida law generally authorizes assignments of after-loss claims under insurance policies. See Lexington Ins. Co. v. Simkins Indus., Inc., 704 So.2d 1384, 1386 n. 3 (Fla.1998) (recognizing that insured may assign proceeds of policy covering lost business income to a third party after the loss); Gisela Inv. N.V. v. Liberty Mut. Ins. Co., 452 So.2d 1056, 1057 (Fla. 3d DCA 1984) ("A provision in a policy of insurance which prohibits assignment thereof except with consent of the insurer does not apply to prevent assignment of the claim or interest in the insurance money then due, after loss."). It is beyond question that Berlinghoff, the insured, is entitled to demand payment under the Hartford PIP policy. See Rodriguez, 808 So.2d at 83. If her assignment to Professional was valid, Professional "stands in her shoes" and has the same rights and status that she does. See Foster v. Foster, 703 So.2d 1107, 1109 (Fla. 2d DCA 1997).
The legislature is presumed to know existing law when it enacts a statute. Holmes County Sch. Bd. v. Duffell, 651 So.2d 1176 (Fla.1995). If it had intended to prohibit after-loss assignments of PIP benefits to third parties who were not *448 medical providers, the statute would have stated as much. Indeed, the legislature has prohibited assignments in other contexts. Cf. § 175.241, Fla. Stat. (2000) (stating that firefighters' pensions, annuities, and benefits "shall be unassignable"); § 440.22, Fla. Stat. (2000) (stating that no assignment of workers' compensation benefits, except as provided in the statutes, shall be valid). But nothing in section 627.736(5) addresses assignments.
When construing statutes, "[i]nference and implication cannot be substituted for clear expression." Carlile v. Game & Fresh Water Fish Comm'n, 354 So.2d 362, 364 (Fla.1977). Thus, we cannot infer that section 627.736(5) prohibits an assignment of benefits to a non-medical third party when the legislature has not specifically spoken on that issue. We hold that Berlinghoff's assignment to Professional was not prohibited by the language of section 627.736(5).
Our conclusion is borne out by a 2001 amendment to section 627.736 that provides "an insurer or insured is not required to pay a claim made by a broker or by a person making a claim on behalf of a broker." § 627.736(5)(b)(1), Fla. Stat. (2001).[1] This 2001 amendment illustrates that section 627.736 does not, as Hartford argues, prevent a PIP insurer from paying claims to anyone other than the four entities mentioned in the statute. If Hartford's position were correct, this amendment would be superfluous; the statute would already prohibit claims by brokers because they are not one of the four named entities. It is a basic rule of statutory construction that the legislature does not intend to enact useless provisions. State v. Goode, 830 So.2d 817 (Fla.2002).
Hartford also contends that Berlinghoff's assignment to Professional is unenforceable because it is contrary to public policy. In short, it asserts that allowing a billing company such as Professional to act as a middleman will increase the costs of medical services provided to accident victims which will, in turn, increase insurance premiums. Hartford notes that controlling the cost of insurance premiums is a stated policy objective of the Florida Legislature. Along similar lines, Hartford claims that section 627.736 does not require it to pay for billing services. As it points out, section 627.736(4)(b) requires an insurer only to pay "eighty percent of all reasonable expenses for medically necessary" medical procedures.
Both of these arguments address the reasonableness of the charge, not whether a claim is assignable. If Hartford believes a portion of charges submitted by Professional are not reasonable or medically necessary, it may seek to avoid paying on that basis. § 627.736(4)(b); Rodriguez, 808 So.2d at 85-6.
In summary, we hold that a PIP insured may assign an after-loss claim to a third party who is not a medical provider. This holding may be in conflict with Physicians Charter, but, as previously noted, nothing in that case states that Physicians Charter held an assignment from the insured, so the cases may be distinguishable on that basis.
In Medical Management Group of Orlando, Inc. v. State Farm Mutual Automobile Insurance Co., 811 So.2d 705 (Fla. 5th DCA 2002), however, the court adopted the reasoning of Physicians Charter in a case where the third party had received an assignment from the insured. Medical Management referred an insured to a medical provider for an MRI. The provider billed Medical Management $350 for the procedure, but Medical Management billed *449 State Farm $1400. The Fifth District did not address the assignment itself, but instead found that "there is simply nothing medically necessary about a billing which compensates for the referral to a particular MRI provider and/or the cost of billing for the provider's services." 811 So.2d at 706-07.[2] Thus, it appears the holding is grounded on the reasonableness of the charge, rather than whether an assignment is permissible. Even so, our holding in this case may be in conflict with Medical Management.
We reverse the county court's order dismissing Professional's suit and remand for further proceedings.
FULMER, J., Concurs.
ALTENBERND, C.J., Concurs specially.
ALTENBERND, Chief Judge, Concurring.
I fully concur in the court's opinion. I write only to emphasize that the certified question asked us to declare the law applicable to a "valid" assignment. Thus we are not resolving the question of whether this particular assignment is legally valid.
The assignment in question assigns all of Ms. Berlinghoff's rights to receive insurance payments to Professional Consulting Services, Inc. The consideration for that assignment is not specified in the form assignment. Professional Consulting Services does not appear to have any contractual obligation to use the benefits it receives to pay the relevant heath care providers. Ms. Berlinghoff apparently remains fully liable to the health care providers and has received no promise that her bill will be forgiven or otherwise resolved by virtue of this assignment. Further, Ms. Berlinghoff's assignment to Professional Consulting Services does not eliminate her obligation to cooperate with Hartford Life and Accident Insurance Company in the processing of this claim. See § 627.736(7), Fla. Stat. (2000).
Our record does not establish the purpose of this assignment. One might suspect that the document was signed to avoid statutory arbitration of a PIP claim submitted by a health care provider, but the assignment was executed after that statutory provision had been declared unconstitutional. See Nationwide Mut. Fire Ins. Co. v. Pinnacle Med., Inc., 753 So.2d 55 (Fla.2000). Thus, while we are recognizing such an assignment under the PIP statutes in effect at the time of this claim, we are not suggesting that such assignments currently serve any worthy purpose.
NOTES
[1] This amendment applies to treatment and services occurring on or after October 1, 2001, so it is not applicable to this case. See ch.2001-271, § 11, at 2948, Laws of Fla.
[2] Certainly the amount Medical Management attempted to bill State Farm was egregious. In that regard, we note that the 2001 amendment to section 627.736, adding the provision that neither an insured nor an insurer was required to pay the claim of a broker, may have been designed to prevent the sort of evils presented in Medical Management. See § 627.736(5)(b)(1), Fla. Stat. (2001); cf. § 817.505, Fla. Stat. (2001) (entitled "Patient brokering prohibited, exceptions, penalties," making it unlawful for any person to "solicit or receive any commission, bonus, rebate, kickback, ... or engage in any split-fee arrangement... in return for referring patients... to a health care provider").